451 P.2d 529

**Lynn L. MECHAM and Lelah H. Mecham, husband and wife, Plaintiffs, Counter-Defendants and Respondents,**

**v.**

**Roscoe N. NELSON and Alva V. Nelson, husband and wife, and Mr. and Mrs. Russell Nelson, husband and wife, and Twin Falls Title & Trust Company, an Idaho Corporation, Defendants, Counter-Claimants and Appellants.**

**No. 10189.**

Supreme Court of Idaho.

Feb. 28, 1969.

Rehearing Denied April 1, 1969.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for appellants.

Gee, Hargraves & Armstrong, Pocatello, for respondents.

SHEPARD, Justice.

This action arises from a contract for the sale of the Jerome County ranch of the respondents Mecham, hereinafter called sellers, to appellants Roscoe Nelsons, hereinafter called buyers. A purchase and sale contract together with contemporaneous escrow instructions were executed by sellers and buyers on May 6, 1964. The total purchase price was recited as $80,000, pay-

able $6,000 down, and the balance of $74,-000 payable as follows:

"As soon as they are reasonably able to do so, the sellers will obtain a maximum loan secured by a mortgage on the above described real property from a reliable lending agency. The buyers shall cooperate in every way in obtaining said loan and mortgage even to the point of joining with the sellers in executing the promissory note and mortgage, should that be required by the lending agency."

The loan was to be thereafter assumed by buyers and the proceeds thereof to be paid to sellers after the discharge of a pre-existing mortgage in the approximate amount of $4,000. It was anticipated that the "maximum loan" would yield approximately $18,000 to $21,000. The remaining balance was to be paid by buyers through the escrowholder: $500 plus interest on December 1, 1964; $1,000 plus interest on December 1, 1965; $1,000 plus interest on December 1, 1966; $7,500 plus interest on December 1, 1967, and a like amount on December 1st of each year thereafter until the principal balance together with interest had been completely paid.

The escrow instructions indicated that the escrow depositary was authorized and directed to pay sellers $3,000 of the down payment at the time of obtaining notice of clear title and was to thereafter collect the additional payments, pay a real estate commission and then furnish the balance to the sellers.

The contract provided that the sellers were to furnish a purchaser's title insurance policy at such time as the "maximum loan" and mortgage were obtained. The buyers were to pay all taxes, assessments and water payments for 1964 and the following years. The contract contained a forfeiture clause providing that sellers might give notice of default in the event buyers defaulted in any material aspect, and that failing correction of such default within 90 days the buyers would forfeit all interest to the property and all monies previously paid. In such event the buyers agreed to surrender possession and absent such surrender they would be deemed to be tenants holding over after the expiration of their term.

Buyers deposited the $6,000 in escrow and immediately went into possession. Sellers thereafter attempted to secure the "maximum loan" by making application therefor to the Utah Mortgage Loan Corporation. Buyers placed appellants Russell Nelsons in possession of the property as tenants and returned to California where they were residents.

The "maximum loan" was never obtained; nevertheless the escrow depositary paid to sellers $3,000 and retained the balance of $3,000. The evidence does not reveal that the title insurance policy was ever issued. After repeated requests by sellers, buyers agreed to release an additional $2,000 from the escrow depositary on November 23, 1964. On February 24, 1965, buyers paid directly to sellers $2,000. On March 26, 1965, buyers paid the Federal Land Bank of Spokane $504 as payment on the existing mortgage. On May 21, 1965, buyers paid directly to sellers $1,500. Such payment was the last made by buyers.

The non-payment of any additional sums is explained in that on July 21, 1965, sellers served a written notice of default alleging that buyers had failed to cooperate with sellers in obtaining the "maximum loan", had failed to pay the $500 payment plus interest due on December 1, 1964, and failed to pay a water assessment of $122.12.

During October and November, 1965, the parties negotiated in attempting to reform the contract and buyers attempted to obtain a loan in their own name. These efforts proved unsuccessful and in December a notice of forfeiture and demand for surrender of the premises was served by sellers. The appellants refused to vacate the premises, and in fact remained in possession until after judgment by the trial court. The present action was filed December 13, 1965.

The complaint reiterated the default grounds specified in sellers' previous notice,

declared the contract forfeited and requested the District Court to restore the property, quiet title in them, grant damages, including damages for unlawful detainer, and award them attorney fees.

Buyers denied default, and prayed for specific performance or in the alternative damages for sellers breach and for attorney fees.

The case was tried to the court without a jury and the court found that the buyers had defaulted in failing to make the full down payment, failing to cooperate in obtaining the loan, failing to pay deferred principal installments, failing to pay the full amount of interest for the years 1965 and 1966, and failing to pay water assessments. It found the buyers guilty of unlawful detainer for the years 1966 and 1967. Damages were awarded sellers on the basis of the reasonable rental value of the property for the period between May 6, 1964 and December 31, 1965. Damages for unlawful detainer were awarded by trebling the reasonable rental value of the property for the years 1966 and 1967. Against said amounts the court set off $11,175.03, representing payments, legal and title fees, property taxes, irrigation assessments and fire insurance, all paid by buyers. Costs and attorney fees in the amount of $3,500 were awarded sellers and the clerk of the court was ordered to pay the sellers $742.50 deposited with him by the escrow depositary. The court ordered the buyers to surrender the premises to the sellers and quieted title in the sellers.

Appellants assign error, among others, in the trial court's findings and conclusions that the buyers had breached the contract and were in default thereof for failure to cooperate in obtaining the "maximum loan", for failure to make specified payments, and that buyers were guilty of unlawful detainer during the years 1966 and 1967 for which sellers were entitled to treble rents.

■ Respondents contend that appellants' assignments of error do not conform to the requirements of Rule 41 of this Court in that they are too general and thus should not be considered. Appellants' brief taken as a whole adequately reveals the position and assertions of appellants in such a way that they could be and were met by respondents and therefore the Court will proceed to consider the merits. Burton v. Bayly, 50 Idaho 707, 300 P. 359 (1931); Mountain States Implement Co. v. Arave, 49 Idaho 710, 291 P. 1074 (1930); Thibadeau v. Clarinda Copper Mining Co., 47 Idaho 119, 272 P. 254 (1928).

■ Appellants contend, as above stated, that the trial court erred in its findings that the appellants had failed to cooperate in obtaining the "maximum loan" and that such failure constituted a material breach of the contract. The evidence does not sustain such a finding. Sellers produced one David R. Mead, an officer of the Utah Mortgage Loan Corporation, as a witness. Mead testified that buyers, following their return to California, had failed to meet with him, but also stated that although he had never seen the Nelsons personally, he had at his disposal all of the necessary information to evaluate the desirability of the loan. He testified that the fundamental reason that his company would not make the loan was that the general policy of all lending agencies in that area was to require an equity of not less than 20% of the property valuation, whereas in this case the buyers had but 7½% equity in the property. Mead also testified that a loan directly to buyers could not be made under the then existing conditions because the buyers did not hold the deed and could not grant a first mortgage to the lending agency, and because their 7½% equity position did not justify issuance of the loan.

The financing arrangement contemplated by the parties and set up by the contract failed not because of non-cooperation by the buyers but because of evident lack of knowledge of the parties as to equity requirements and the failure of parties extrinsic to the contract to behave in an anticipated manner. The only method by which the loan could be obtained was for buyers to have increased their down payment to approximately $16,000, and this

they were not required by the contract to do. The parties indicated by their consistent actions that the "maximum loan" was an essential part of their thinking and the contract and despite continued efforts, without the loan the contract proved unworkable. Respondents contend that the actions of appellants were tantamount to fraud and obtaining lodging without payment or forage for animals without payment, both of which constitute criminal acts. We say not so. Rather, we observe that the parties hereto entered into an agreement which became impossible of performance. Performance was possible only by a radical change in the agreed duty of the buyers. That duty had already been bargained for and they need not assume more.

The courts have almost uniformly held in such cases that there has been a failure of a condition precedent and that liability under the contract is therefore avoided. 81 A.L.R.2d 1338; 43 Marquette L.R. 265, 1963 Wisconsin L.R. 566.

This Court in McMinn v. Holley, 86 Idaho 186, 384 P.2d 229 (1963), had before it a factual pattern similar to the case at bar. Involved therein was a contract for the sale of a farm containing the clause "A loan in the amount of $7,000 is to be secured on farm by sellers and purchasers, paying off existing loan and balance to sellers." In that case it does not appear that it was impossible to obtain the loan, but merely that the purchasers became dissatisfied with the transaction and rescinded it. This Court said in the McMinn case,

"Whether a provision in a contract amounts to a condition precedent is generally dependent on what the parties intended, as adduced from the contract itself. * * *

"It is our view that * * * the obtaining of the $7,000 loan was a condition precedent to obligations arising under the initial receipt and agreement to purchase; such loan not having been obtained the contract was unenforceable."

We believe the decision in McMinn was eminently correct in announcing the law as followed almost universally by courts across the country, that such is applicable and in fact controlling herein.

In McMinn v. Holley, supra, the purchasers shortly after execution of the contract attempted a rescission of the contract and offered a surrender of the premises. Such was not the situation in the case here. The evidence herein, however, indicates that the parties made long efforts to obtain the loan and that final refusal thereof resulted in July, 1965, some 14 months following execution of the contract. Thereafter the parties attempted reformation of the contract and the buyers attempted themselves to secure the loan. Shortly thereafter this action was filed. At that point the buyers had the right to stand still and require adjudication of their rights.

Consideration of the relative claims by each of the parties that the other defaulted in the performance of obligations and therefore breached the contract, is unnecessary to this decision. No liability or duty having arisen under the contract, no breach can have taken place.

Having held that liability under the contract was avoided because of the failure of a condition precedent, it then became the duty of the trial court to settle the accounts between the parties. A specific standard is set forth in McMinn v. Holley, supra:

"It being our determination that the relationship of the parties herein was not that of vendor and purchaser, by reason of the failure of the contract to materialize, it becomes incumbent upon the trial court to arrive at a settlement of accounts between the parties growing out of the possession of the plaintiffs' farm property by the defendants, and the possession of the defendants' residence property by the plaintiffs for the period of time involved. It is incumbent on the trial court to find and fix the reasonable rental values of the respective properties for the period of possession, and to de-

termine the value of any improvements made upon the respective properties, to allow all proper credits and debits and render judgment accordingly."

The trial court made extensive findings purporting to settle all necessary matters in controversy. There is, however, no controversy and it is clear from the evidence that buyers made payments in the following amounts: $1,000 on March 29, 1964, $5,000 on May 6, 1964, $2,000 on February 24, 1965, $1,500 on May 21, 1965, and $504 paid to the Federal Land Bank of Spokane on March 26, 1965, representing a payment on the previously existing mortgage.

All of said payments are represented by checks issued by buyers and cashed by payees. Said checks were admitted into evidence as exhibits and sellers' counsel upon their offer as evidence stated: "We are not raising any question as to their payment, Your Honor. They were paid to the people." Insofar as can be determined from the record and the findings and conclusions of the court, no credit was allowed by the court for the $2,000 payment made by buyers on February 24, 1965. It further appears that only partial credit was given buyers for the $1,000 payment made March 29, 1964 and the $5,000 payment made on May 6, 1964, both of which payments were made to the escrow depositary. No reason therefor can be ascertained from the record

and the trial court presumably gave allowance only for the amount received by sellers rather than the amount paid by buyers. Such two amounts were not identical because of the provisions of the contract relating to the escrow depositary.

In awarding damages, the trial court found the reasonable rental value of the premises for the years 1964 through 1967. For the years 1966 and 1967 the court awarded treble rents based on the forfeiture clause of the contract providing that failure to surrender possession would result in a status of "tenants holding over after the expiration of their term", which status would make them liable for unlawful detainer. I.C. §§ 6-303, 6-316.[1]

We have decided that the contract was unenforceable and therefore the status referred to as "tenants holding over" never came into being. It is unnecessary to delineate the relationship of the parties herein except to say that such relationship was not a landlord-tenant relationship required for the application of the concept of unlawful detainer. In Coe v. Bennett, 39 Idaho 176, 226 P. 736 (1924), the court observed:

"One in possession under a contract to purchase does not after default in the payments become a tenant at will subject to removal by unlawful detainer. (cita-

1. "6-303. Unlawful detainer defined.—A tenant of real property, for a term less than life, is guilty of an unlawful detainer:

1. When he continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to him, without the permission of his landlord, or the successor in estate of his landlord, if any there be; but in case of a tenancy at will, it must first be terminated by notice, as prescribed in the Civil Code. * * * *"

"6-316. Judgment—Treble damages—Restitution.—If, upon the trial, the verdict of the jury, or, if the case be tried without a jury, the finding of the court, be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding be for an unlawful de-

tainer after neglect or failure to perform the conditions or covenants of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement. The jury, or the court, if the proceeding be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and fined the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent, and the judgment shall be rendered against the defendant guilty of the forcible entry, or forcible or unlawful detainer, for three times the amount of the damages thus assessed, and of the rent found due. * * * *"

tions omitted) The vendee in possession is not a tenant in any sense of the word and only a tenant may be sued under the first subdivision of C.S. § 7322. (citations omitted) Failure of performance of his part of the contract of sale by the vendee in possession does not make him a tenant. (citations omitted)"

Idaho is further committed to the rule that absent a showing of malice, wantonness or oppression, treble damages cannot properly be awarded in an action for unlawful detainer. Pearson v. Harper, 87 Idaho 245, 392 P.2d 687 (1964); Knight v. Fox Caldwell Theatres Corp., 70 Idaho 148, 212 P.2d 1027 (1949). No such showing was made herein.

In the case at bar the contract provided that the prevailing party in any action based on the contract should receive reasonable attorney fees. The trial court awarded $3,500 to sellers as reasonable attorney fees. As above stated, all liability under the contract had been avoided and it is settled law in this state that attorney fees are not recoverable unless provided for by statute or by contract of the parties. National Motor Service Co. v. Walters, 85 Idaho 349, 379 P.2d 643 (1963); Financial Credit Corp. v. Douglas, 71 Idaho 312, 230 P.2d 1002 (1951). No liability having been incurred under the contract and there being no contention that the matter is governed by a statute, attorney fees were improperly awarded.

The judgment is therefore reversed and the matter remanded to the trial court for amended or additional findings of fact regarding monies paid by buyers; the increased value, if any, to the property as a result of improvements made by buyers; and for amended or further conclusions of law consistent with this decision; and thereafter the entry of judgment consistent with such amended or further findings of fact and conclusions of law. Costs to appellants.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.