970 P.2d 980

**J.R. SIMPLOT COMPANY, a Nevada corporation, Plaintiff–Appellant,**

v.

**ENVIRO–CLEAR COMPANY, INC., a foreign corporation, Defendant–Respondent.**

No. 23493

Supreme Court of Idaho,
Idaho Falls, October 1998 Term.

Nov. 24, 1998.

Rehearing Denied Feb. 3, 1999.

Tolman Law Office, Twin Falls, for appellant. Steven K. Tolman argued.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for respondent. Brent O. Roche argued.

JOHNSON, Justice

This is a breach of contract and breach of warranty case that involves the application of the chapter concerning sales in the Uniform Commercial Code (the UCC), Title 28, Chapter 2 of the Idaho Code (I.C.). We conclude that the trial court should not have granted a directed verdict dismissing the claims.

I.

**THE BACKGROUND AND PRIOR PROCEEDINGS**

In June 1990, J.R. Simplot Company (Simplot) requested quotations for the purchase by Simplot of equipment (the equipment) to clarify and thicken ore at one of Simplot's plants. The request included the following statement: "We reserve privilege of accepting all or part of your proposal." Enviro–Clear Company, Inc. (Enviro–Clear) responded by submitting a proposal in July 1990, and a first revised proposal (the first revised proposal) in September 1990. Representatives of Simplot and Enviro–Clear held a meeting on October 18, 1990 (the October 18 meeting), to discuss the first revised proposal and to negotiate the terms of purchase. At the conclusion of the October 18 meeting, Simplot informed Enviro–Clear that Simplot would purchase the equipment from Enviro–Clear. The next day, Simplot prepared, signed, and mailed to Enviro–Clear a purchase order (the purchase order), which Enviro–Clear received on October 26, 1990. The purchase order generally described the equipment, but stated: "DETAILED EQUPMENT [sic] DESCRIPTION WILL FOLLOW AND BE A PART

OF THIS PURCHASE ORDER." The purchase order stated the price of the equipment was $494,625.00. The reverse side of the purchase order contained the following provisions, among others:

THIS ORDER IS PLACED SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS WHICH MAY NOT BE VARIED OR ADDED TO EXCEPT BY A WRITING SIGNED BY BUYER'S DULY AUTHORIZED REPRESENTATIVE.

. . .

2. Seller expressly warrants and represents as follows:

(a) All goods covered by this order are free of defects in material and workmanship, conform to applicable specifications, drawings, samples and descriptions, are of merchantable quality, and are suitable for Buyer's intended purposes.

. . .

5. This contract contains the entire agreement of the parties. It may not be modified or terminated orally, and no claimed modification, termination or waiver shall be binding on Buyer unless in writing signed by a duly authorized representative of Buyer. NO MODIFICATION OR WAIVER SHALL BE DEEMED EFFECTED BY SELLER'S ACKNOWLEDGMENT OR CONFIRMATION CONTAINING OTHER OR DIFFERENT TERMS.

On October 22, 1990, Enviro–Clear prepared and sent to Simplot a second revised proposal (the second revised proposal), which included a detailed description of the equipment and other provisions. The second revised proposal included a detailed description of the equipment and stated the price to be $491,599.99, noting that the price was based on a sale price of $494,625.00 with a credit of $3,025.01 for test work done in March 1990. The second revised proposal stated the terms of payment as follows:

10% of total purchase price to be paid on submittal of approval of drawings ($49,-160.00).

80% of thickener supply price to be paid upon shipment ($336,171.40).

80% of field erection price to be paid upon completion of Enviro–Clear's scope of erection ($57,108.59).

10% of total purchase price to be paid upon acceptance, but in no case later than four months after thickener is put into operation or ten months from the date of delivery, whichever comes sooner ($49,160.00).

Both the first revised proposal and the second revised proposal included a "PERFORMANCE GUARANTEE" (the performance guarantee) in which Enviro–Clear guaranteed that the equipment would operate in accordance with the design conditions, provided the operating instructions were followed and provided another condition was fulfilled. The performance guarantee included a "PERFORMANCE TEST" (the performance test), which included the following provisions, among others:

Buyer agrees to conduct a performance test within four months of the date upon which the thickener was put into operation or ten months [four months in the first revised proposal] from the date of delivery, whichever occurs first. Failure to conduct a test within the time specified shall release Seller from his obligation under the performance guarantee.

Among the conditions contained in both the first revised proposal and the second revised proposal were the following:

7. WARRANTIES. Seller shall replace or repair f.o.b. point of manufacture parts found to be defective in material or workmanship within one year from date of delivery. Decomposition by chemical action and wear caused by the presence of abrasive materials shall not constitute defects. The foregoing constitutes Seller's sole warranty hereunder: There are no other agreements, representations or warranties, express, implied or statutory, INCLUDING THE IMPLIED WARRANTY OF FITNESS, of any character as between the parties. Seller shall not be held liable for any damage (direct or consequential), delay or loss, including loss of profits, which may result, directly or indirectly, from the adjustment, alteration, breakdown, repair or operation of any Equip-

ment furnished. Operating results of the Equipment are not guaranteed.

. . .

10. EFFECTIVE DATE, CANCELLATION, AMENDMENTS: This proposal constitutes an offer by ENVIRO–CLEAR COMPANY, INC. It shall not be construed as the acceptance of any prior offer. It shall not become a binding contract, until the date on which it is approved in writing hereon by an officer of Seller. Upon becoming a binding contract, it may not be cancelled for any reason. It may be changed only in writing signed by an officer of each party hereto.

Simplot never signed the second revised proposal in the place provided for acceptance.

Enviro–Clear specially manufactured the equipment for Simplot, shipped the equipment to Simplot, and placed the equipment into operation at Simplot's plant in September 1991. Simplot made all the payments to Enviro–Clear for the purchase of the equipment as provided in the second revised proposal. After the equipment was placed into operation, Simplot began to experience operational and mechanical difficulties with the equipment. When Enviro–Clear did not correct the problems to Simplot's satisfaction, Simplot contracted with another firm to retrofit the equipment.

Simplot sued Enviro–Clear for breach of contract, breach of warranty, and negligence, alleging that the equipment was defective and that Enviro–Clear failed to correct the defects. Simplot abandoned the negligence claim before trial. Enviro–Clear contended that at the October 18 meeting Simplot had agreed to the terms and conditions contained in the second revised proposal, that Enviro–Clear had not breached the limited warranty contained in the second revised proposal, and that Simplot's failure to conduct a performance test released Enviro–Clear from its duties to correct the problems with the equipment.

At trial, Rocky Godwin (Godwin), the person in charge of the project for which Simplot was purchasing the equipment and one of Simplot's representatives at the October 18 meeting, testified as follows:

Q. Had the language of the performance guarantee changed from Enviro–Clear's first proposal?

A. No, no, I don't think so.

Q. Had the language from the performance test changed from their last proposal?

A. Yeah, I see a change in the time frames. We're now saying that we've got ten months to do the tests and there's going to be a 24–hour test, before it was eight.

Q. Did you request those changes?

A. I think we did, yes.

Q. In requesting those changes were you agreeing to the performance test?

A. Not necessarily, no. My view was we had the right to waive it or whatever we wanted to do.

Q. And on the performance guarantee, did you accept the performance guarantee?

A. No.

. . .

Q. By [counsel for Enviro–Clear]: Mr. Godwin, following the meeting on October 18th of 1990, you indicated they had a verbal to go. Did you tell them you've got the work so follow it up with the contractual documents to get it done?

A. I won't deny having said that.

. . .

Q. [By counsel for Simplot:] I believe in response to one of [Enviro–Clear's counsel's] questions he asked you when he was reading from your deposition if you made the statement after the meeting of October 18th, 1990, quote, "Let's get the contractual documents to get it done." What documents were you referring to then?

A. I would have been referring at that time as let's get the proposal to agree in writing with what we agreed verbally in that meeting.

Q. And what were you referring to though, what other contractual documents?

A. And our purchase order, get it cut or get them that day, get them a number and later follow up with the written document.

At trial, Wendell Ray Bosen (Bosen), another of Simplot's representatives at the October 18 meeting testified, as follows:

Q. Now, you previously testified that you were present at a meeting that took place on October 18th, 1990?

A. Yes.

. . .

Q. Were you present for that whole meeting?

A. I believe, as I recall, I was there the whole time.

Q. At any time did you hear anyone from Simplot state that they were in agreement with and accepted the performance guarantee?

A. I don't recall that being at any time.

Following Simplot's presentation of its evidence at trial, Enviro–Clear requested that the trial court direct a verdict in its favor. In granting the directed verdict, the trial court stated: "The Court is convinced that the only substantial evidence in the record, upon which a jury could properly rely, establishes that Simplot acknowledged that performance testing was required under the contract." The trial court concluded that "the contract between the parties herein, including all the material terms and provisions thereof, was formed at the meeting on October 18, 1990." The trial court, citing I.C. § 28–2–207, stated that as an alternative basis for the directed verdict, the terms of the purchase order did not become part of the contract because the portions concerning warranties and guarantees would materially alter the agreement reached in the October 18 meeting. The trial court also stated that the second revised proposal provided only a limited express warranty which the evidence entirely failed to show was breached, and disclaimed all other express or implied warranties. The trial court concluded that "[t]he terms and provisions of the agreement and contract between the parties are as specified in [the second revised proposal]," and that "[t]here was no evidence of sufficient quality and probative value to support a finding that Enviro–Clear breached any contractual terms or warranty provisions within the agreement and contract of the parties." The trial court entered judgment dismissing Sim-

plot's claims and awarding Enviro–Clear $143,227.65 in costs and attorney fees. Simplot appealed.

## II.

### THE TRIAL COURT SHOULD NOT HAVE DIRECTED A VERDICT.

■ Simplot asserts that the trial court should not have granted a directed verdict dismissing its claims. We agree.

In *De Los Santos v. J.R. Simplot Co.*, 126 Idaho 963, 895 P.2d 564 (1995), this Court stated that "our standard of review for a directed verdict requires us to 'review the record of the trial below and draw all inferences from the evidence in a light most favorable to the non-moving party to determine if there was substantial evidence to justify submitting the case to the jury.'" *Id.* at 966, 895 P.2d at 567 (quoting *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bullard v. Sun Valley Aviation, Inc.*, 128 Idaho 430, 432, 914 P.2d 564, 566 (1996).

This case involves the sale of goods between merchants as described in the UCC. I.C. § 28–2–105(1) and § 28–2–104(1) and (3). Enviro–Clear contends that the second revised proposal contains the agreement for the purchase of the equipment the parties reached at the October 18 meeting. Simplot contends that the purchase order contains the terms of their agreement to purchase the equipment.

There is no question that the purchase took place. Enviro–Clear delivered and installed the equipment, and Simplot paid for it. Therefore, this is not a case about whether the sale of the equipment by Enviro–Clear is enforceable under the statute of frauds. I.C. § 28–2–201(3)(c) (stating that a contract is enforceable "with respect to goods for which payment has been made and accepted"); *see also Hoff Bldg. Supply v. Wright*, 76 Idaho 298, 302, 282 P.2d 478, 479 (1955) (holding that where seller made full delivery of special lumber which buyer ordered, and

buyer accepted the lumber, the statute of frauds had no application). This case is about what warranties and guarantees accompanied the purchase of the equipment.

■ Despite the fact that this is not a statute of frauds case, Enviro–Clear contends that portions of the UCC statute of frauds dictate the result reached by the trial court in granting a directed verdict. The applicable statute of frauds in the UCC provides, as follows:

**28–2–201. Formal requirements— Statute of frauds.**—(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 28–2–606).

I.C. § 28–2–201. Enviro–Clear would have us apply subsection (2) of this statute to the circumstances of this case. This contention misperceives the purpose of subsection (2), which is to substitute for the requirements of a writing contained in subsection (1). In this case, the requirement of a writing contained in subsection (1) of the statute is made unnecessary because Simplot accepted the equipment and paid for it. Our task, instead, is to examine what questions of fact concerning the terms of the purchase Simplot's evidence at trial raised that the trial court should have submitted to the jury.

Reviewing the evidence, especially the testimony of Godwin and Bosen, and drawing all inferences in favor of Simplot, we conclude there is substantial evidence that Simplot did not agree to the performance guarantee and the disclaimer of warranties contained in the second revised proposal. The trial court should have allowed the jury to assess the credibility of these witnesses and the weight of their testimony as compared to evidence supporting Enviro–Clear's contention that the performance guarantee and the disclaimer of warranties were part of the agreement for the purchase. There are, of course, other questions that depend for their resolution on whether the jury finds that the performance guarantee and the disclaimer of warranties were part of the purchase agreement or not. It is premature in this appeal to address those questions.

### III.

### CONCLUSION

We vacate the judgment dismissing Simplot's claims and awarding Enviro–Clear

**256**

costs and attorney fees. We remand the case to the trial court for a new trial.

We award Simplot costs on appeal.

Simplot has also requested attorney fees on appeal pursuant to I.C. § 12–120. Attorney fees are recoverable by a prevailing party in an action based upon a "commercial transaction" and in a "contract [action] relating to the purchase or sale of goods...." I.C. § 12–120(3). The fact that we have vacated the judgment based on the directed verdict and remanded the case to the trial court for a new trial does not entitle Simplot to an award of attorney fees on appeal pursu-

ant to I.C. § 12–120(3). Whether Simplot prevails in a new trial will determine their entitlement to attorney fees under this statute.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS CONCUR.