42 P.3d 715 (2002)
136 Idaho 922
WADE BAKER & SONS FARMS, a partnership, Plaintiff-Counterdefendant-Appellant,
v.
CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation; and Larry Adams, Defendants-Counterclaimants-Respondents.
No. 26602.
Court of Appeals of Idaho.
March 4, 2002.
*716 Anderson, Julian Hull, Boise, for appellant. Kenneth D. Nyman argued.
Service, Gasser Kerl, Pocatello; Parsons, Smith Stone, Burley, for respondents. Ron Kerl argued.
LANSING, Judge.
This action stems from a real estate transaction in which the purchaser of agricultural land agreed to collect rent from a lessee for the next farming season and remit the rental to the seller. When this rental payment was not made, the seller brought this action against the purchaser. The district court granted summary judgment for the purchaser on the basis that a condition precedent to the purchaser's obligation-payment of rent by the lessee-had not occurred and that the seller's interference had caused or contributed to the nonoccurrence of that condition precedent. We conclude that there are material factual issues that make summary judgment inappropriate, and we therefore vacate the judgment and remand this case for further proceedings.

I.

FACTUAL AND PROCEDURAL BACKGROUND
In the fall of 1994, plaintiff Wade Baker & Sons Farms ("Baker Farms") owned a 375 acre parcel of agricultural land and also held an option to repurchase another parcel of approximately 1,800 acres that Baker Farms had previously owned. Apparently anticipating that it would reacquire the 1,800 acres, Baker Farms entered into negotiations with a farmer, Larry Adams, for Adams to lease approximately 600 acres of the 1,800-acre parcel. However, in December 1994, before having signed a lease with Adams, Baker Farms began negotiating to sell its option on the 1,800-acre parcel to defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (the "LDS Corporation"). The LDS Corporation wanted to make this purchase but also wanted to purchase Baker Farms' 375 acre parcel. As part of the consideration to induce Baker Farms to sell the 375 acre piece, the LDS Corporation agreed that Baker Farms could retain the monetary benefit of the anticipated lease of the 600 acres to Adams, which called for Adams to pay rental of approximately $180,000. The parties structured the payment in this manneras a retention by *717 Baker Farms of rental from the larger parcelin an effort to shelter that payment from the reach of an Internal Revenue Service lien on the 375-acre parcel.
On January 19, 1995, the contract for the sale of the 1,800-acre parcel closed. On the same date, the LDS Corporation's attorney sent a letter to Baker Farms' attorney expressing the concern that the LDS Corporation's obligation to pay to Baker Farms the rent from the 600 acres "should be conditional" upon the LDS Corporation's receipt of the rent from Adams. In response to this concern, Baker Farms' attorney drafted a contract titled "Agreement Re: Payment of $180,000" that included the following clauses:
(a) It is understood and agreed by the Church and Baker Farms that simultaneous with the purchase of the 375 deeded acres ... the Church shall pay Baker Farms the sum of $180,000. The payment of $180,000 is conditioned upon not only the purchase and sale of the 1,855.593 acres but the sale of the 375 acres ....
(b) It is understood and agreed that simultaneous with the sale by Baker and the purchase by the Church of the 375 acres ..., the Church shall wire transfer to the trust account of [Baker Farms' attorney] the sum of $180,000 as rent which Baker is entitled to receive. The actual disbursement of the funds shall be made immediately after the 375 acre sale is concluded and the title insurance company has bound itself to issue title insurance and the rent has been paid.

(Emphasis added.) This draft agreement further provided that if Adams did not lease the 600 acres, then Baker Farms would be entitled to arrange for the lease of that parcel by a third party and to receive the lease rent, and if no third-party lease could be arranged, then Baker Farms would be entitled to farm the same acreage without payment of rent.
Baker Farms' attorney delivered a draft of this agreement on January 20, and the LDS Corporation's attorney responded with a letter of the same date indicating that the draft agreement had been accepted. For reasons that are not explained in the record, this contract was not signed by either party. Both parties acknowledge, however, that it accurately expresses the terms to which they had agreed as of January 20, 1995. The sale of the 375-acre parcel closed in May 1995. Baker Farms waived the requirement that the $180,000 be paid immediately after this closing, apparently to prevent the payment from coming to the attention of the Internal Revenue Service.
In the spring of 1995, Adams was allowed to begin farming operations on the 600 acres even though no lease was yet executed between him and the LDS Corporation and no rent had been paid. A lease was later executed, apparently in the late spring or early summer. It provided that the annual rent in an amount exceeding $185,000 was due and payable upon signing the lease, but Adams paid no rent. Adams represented to the LDS Corporation that he had paid the rent directly to Baker Farms through some side agreement involving a custom farming contract, a contention that Baker Farms denies. The LDS Corporation accepted Adams' representation of having paid the rent without obtaining confirmation from Baker Farms. Despite Baker Farms' subsequent demands, the LDS Corporation never collected the rent from Adams and never paid the $180,000 to Baker Farms. This action for collection of the sum was filed by Baker Farms in December 1997.
The LDS Corporation moved for summary judgment on two bases. First, it argued that under terms of the parties' oral agreement, as described in the January 20, 1995 unsigned contract, Adams' payment of the rent to the LDS Corporation was a condition precedent to the LDS Corporation's obligation to remit the $180,000 payment to Baker Farms. Because Adams had never paid the rent, the LDS Corporation asserted that its performance had never come due with respect to the $180,000. In the alternative, the LDS Corporation argued that a principal of Baker Farms, Rell Baker, had interfered with the collection of Adams' rent by giving Adams permission to delay the payment of rent. The district court accepted both of these arguments and granted summary judgment dismissing the action against the LDS Corporation. On appeal, Baker Farms contends *718 that the district court made errors of law and that there are material issues of fact that make summary judgment impermissible.

II.

ANALYSIS
Summary judgment is appropriate only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Thus, "if uncontroverted facts lead to a definite disposition as a matter of law, summary judgment is appropriate." Jordan v. Beeks, 135 Idaho 586, 590, 21 P.3d 908, 912 (2001). A court considering a summary judgment motion must liberally construe the evidence in favor of the party opposing the motion and draw all reasonable inferences in that party's favor. Id.; Treasure Valley Gastroenterology Specialists, P.A. v. Woods, 135 Idaho 485, 488-89, 20 P.3d 21, 24-25 (Ct.App.2001). If reasonable persons could reach different findings or draw conflicting inferences from the evidence, the motion must be denied. Jordan, supra; Rausch v. Pocatello Lumber Co., Inc., 135 Idaho 80, 14 P.3d 1074 (Ct.App. 2000).

A. The LDS Corporation Has Not Shown that Its Performance Is Excused by the Nonoccurrence of a Condition Precedent.
The first question presented is whether, viewing the facts in the light most favorable to Baker Farms, Adams' payment of the rent was a condition precedent, the nonoccurrence of which relieved the LDS Corporation from its obligation to make the $180,000 payment. On this point, Baker Farms concedes that the parties' agreement that the payment from the LDS Corporation would be made after the rent had been paid by Adams established a condition precedent to the LDS Corporation's duty. Baker Farms argues, however, that this condition precedent does not shelter the LDS Corporation from liability because this condition was at least partially within the control of the LDS Corporation, which therefore had an implied obligation to make a reasonable effort to bring about the occurrence of the condition. We agree.
A condition precedent is an event that is not certain to occur, but which must occur, unless its nonoccurrence is excused, before performance under a contract will become due. World Wide Lease, Inc. v. Woodworth, 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct.App.1986); RICHARD A. LORD, 13 WILLISTON ON CONTRACTS § 38:5 (4th ed.2000); RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981). If there is a failure of a condition precedent through no fault of the parties, no obligation of performance arises under the contract. World Wide Lease, supra; RESTATEMENT (SECOND) OF CONTRACTS § 225. However, when the happening of the event is within the exclusive or partial control of the party whose obligation is conditioned upon the event, its nonoccurrence will not always excuse the obligor's performance. The Idaho Supreme Court has stated:
The rule of law determinative of the principal issue raised by this appeal has been well stated by Professors Williston and Corbin:
It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.
... The illustrations of this principle are legion. 5 Williston on Contracts, § 677 (3d ed.1961).
One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.
... 3A Corbin on Contracts, § 767 (1960).
Fish v. Fleishman, 87 Idaho 126, 133, 391 P.2d 344, 348 (1964).
A more recent edition of WILLISTON ON CONTRACTS addresses the issue as follows:

*719 A provision may be both a condition and a promise if one of the parties additionally promised to insure that the condition would occur as part of his bargain, and this independent promise to perform the condition will subject the nonfulfilling party to liability for damages for a failure of the condition to occur. Whether one who has made a conditional promise undertakes impliedly to make the condition possible, depends on reasonable inferences to be drawn in each case. When the occurrence of a condition is largely or exclusively within the control of one party, so that the party is largely or totally dependent on the party within whose control the conditioning event lies, the express language of the condition often gives rise to an implied promise.
LORD, supra at § 38:15.
If a promisor prevents or hinders the occurrence or fulfillment of a condition to his or her duty of performance, the condition is excused; in other words, "the nonoccurrence or nonperformance of a condition is excused where the failure of the condition is caused by the party against whom the condition operates to impose a duty." Accordingly, the liability of the promisor is fixed regardless of the failure to fulfill the condition. The pertinent rule ... is that where a party's breach by nonperformance contributes materially to the nonoccurrence of a condition of one of his duties, the nonoccurrence is excused, so that performance of the duty that was originally subject to its occurrence can become due in spite of its nonoccurrence.
Id. at § 39:4 (quoting Rohde v. Massachusetts Mut. Life Ins. Co., 632 F.2d 667 (6th Cir.1980)).
In the context of an employer's obligation to pay for personal services, the Idaho Supreme Court expressed the principle this way:
When the payment of a debt for services performed is conditioned on the happening of some event, which is under the control of the obligor, the event must happen or a reasonable time must elapse before payment becomes due, and the obligor must make some reasonable effort to cause the event to happen.

Schlueter v. Nelson, 74 Idaho 396, 399, 263 P.2d 386, 387 (1953) (emphasis added).
These longstanding principles governing application of conditions precedent in contract law are consistent with, and tend to merge into, the covenant of good faith and fair dealing which, under Idaho law, is implied in every contract. See Crea v. FMC Corp., 135 Idaho 175, 179, 16 P.3d 272, 276 (2000); Taylor v. Browning, 129 Idaho 483, 490, 927 P.2d 873, 880 (1996); Wooden v. First Security Bank of Idaho, 121 Idaho 98, 101, 822 P.2d 995, 998 (1991); Idaho First Nat'l Bank v. Bliss Valley Foods, Inc., 121 Idaho 266, 288, 824 P.2d 841, 863 (1991); Luzar v. Western Surety Co., 107 Idaho 693, 696, 692 P.2d 337, 340 (1984); See also RESTATEMENT (SECOND) OF CONTRACTS § 230. The implied covenant requires that the parties perform in good faith the obligations imposed by their agreement, and a violation of the covenant occurs when the conduct of one party violates, nullifies or significantly impairs any benefit or right conferred on the other party by the contract. Idaho Power Co. v. Cogeneration, Inc., 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000); Bliss Valley Foods, 121 Idaho at 289, 824 P.2d at 864. Thus, the implied covenant places a good faith obligation on each party to take reasonable measures to ensure that the other party obtains the benefits of the agreement. George v. Univ. of Idaho, 121 Idaho 30, 37, 822 P.2d 549, 556 (Ct.App.1991).
When the principles of law discussed above are applied in the present case, it becomes apparent that there are material factual issues that make summary judgment in favor of the LDS Corporation inappropriate. First, the nonoccurrence of the condition precedent upon which the LDS Corporation reliesAdams' failure to pay rentwas wholly or partially within the LDS Corporation's control. The LDS Corporation could have required that Adams execute a lease and pay the rent in advance before he could commence farming operations in the spring of 1995. Draft versions of the lease that were exchanged with Adams in early 1995, but not signed, and the lease that was ultimately *720 executed, provided that the rent was due and payable upon execution of the lease, but the LDS Corporation did not enforce this term. There are thus material issues as to whether the LDS Corporation had an implied obligation to take reasonable steps to collect the rent, whether it failed to do so, and whether by its conduct the LDS Corporation materially contributed to the nonoccurrence of the condition precedent.
In addition, the unsigned "Agreement Re: Payment of $180,000," which both parties acknowledge expressed the terms of their contract, provided contingencies in the event that the 600-acre parcel would not be leased to Adams. It gave Baker Farms the alternatives of farming the land itself or finding another third party to lease the land. Thus, factual issues are presented as to whether the LDS Corporation deprived Baker Farms of the benefit of this term of the contract by allowing Adams to farm the land in the spring of 1995 although he had not paid the rent.[1]
We next address the LDS Corporation's argument that the $180,000 payment obligation was excused because Baker Farms, through its principal, Rell Baker, exerted control over Adams' payment of rent and authorized Adams to delay payment. This argument is based upon Rell Baker's deposition testimony that sometime after January 19, 1995 (the closing date on the 1,800-acre parcel) he had a conversation with Adams in which Adams said he could not make the rental payment at that time because he had not yet obtained loan approval from his bank. Adams asked Rell Baker to delay making a demand on the LDS Corporation for the money so that the LDS Corporation would not in turn request payment from Adams. Rell Baker's testimony about this conversation continued as follows:
Q: When Adams asked you to delay making demand for the money from the Church, what did you say in response?
A: Well, I told him at that time we weren't anticipating needing it, because we hadn't got our negotiations [with the Internal Revenue Service] done yet.
....
Q: Did you agree to delay making your demand?
A: I told him we would have to talk about it and see. I didn't know how the Church or if the Church would demand it or not.
The LDS Corporation has argued, and the district court held, that Rell Baker's testimony, "I told him at that time we weren't anticipating needing it, because we hadn't got our negotiations done yet," establishes that Rell Baker authorized Adams to delay payment and thereby caused Adams not to pay the rent according to terms of the lease. We disagree that such a fact is established by this testimony, or that such an inference may be drawn for purposes of disposition of the summary judgment motion. The remainder of Rell Baker's testimony on this point indicates that he gave no definitive response to Adams' request but rather told him that "we would have to talk about it and see." There is no evidence that Rell Baker or Baker Farms ever asked or authorized the LDS Corporation to delay collection of rent from Adams as a result of this conversation or for any other reason. Inferring from this deposition testimony that Rell Baker authorized or induced Adams to delay payment of the rent violates the rule that, in acting on a summary judgment motion, the court must resolve factual issues and draw all reasonable inferences in favor of the party opposing the motion. See Crown v. State, Dep't of Agric., 127 Idaho 175, 179-80, 898 P.2d 1086, 1090-91 (1995); G & M Farms v. Funk Irrig. Co., 119 Idaho 514, 517, 525, 808 P.2d 851, 854, 862 (1991).[2]
*721 For the foregoing reasons, we hold that it was error for the trial court to grant summary judgment dismissing Baker Farms' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Remand for further proceedings is required.[3]

B. The Cause of Action for Breach of Fiduciary Duty Was Correctly Dismissed.
In addition to alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing, Baker Farms alleged a cause of action for breach of fiduciary duty stemming from the LDS Corporation's failure to collect the rent from Adams. As to this last cause of action, we affirm the summary judgment in favor of the LDS Corporation, for the evidence establishes that there was no fiduciary relationship between the LDS Corporation and Baker Farms.
Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction. See Bliss Valley Foods, Inc., 121 Idaho at 277-81, 824 P.2d at 852-56; Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, 119 Idaho 171, 176, 804 P.2d 900, 905 (1991); R.G. Nelson, A.I.A. v. M.L. Steer, 118 Idaho 409, 411, 797 P.2d 117, 119 (1990); Anderson v. Michel, 88 Idaho 228, 236, 398 P.2d 228, 232-33 (1965); Mitchell v. Barendregt, 120 Idaho 837, 844, 820 P.2d 707, 714 (Ct.App. 1991). In Anderson, our Supreme Court stated, "Except under special circumstances, no fiduciary obligations exist between a buyer and seller of any property." Id. at 236-37, 398 P.2d at 232-33. In Mitchell, this Court gave examples of situations where a fiduciary relationship may arise, and held that an arm's length transaction between the parties would not qualify:
Mitchell argues that ... a relationship of trust and confidence existed in this case for two reasons: (1) Mitchell trusted Barendregt, and (2) as parties to a contract, Mitchell and Barendregt were obliged to act in good faith toward one another. The law of contracts is clear that neither of these facts is sufficient to establish a relationship of trust and confidence from which the law will impose fiduciary obligations between Mitchell and Barendregt. Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends. All the evidence presented in this case shows that Mitchell and Barendregt shared none of these relationships, but were parties who entered into an agreement at arms [sic] length.
Id. at 844, 820 P.2d at 714.
In the present case, the relationship between the parties was as buyer and seller of *722 real property. Each was represented by counsel throughout, and they dealt with one another at arm's length. Baker Farms has presented no evidence from which a reasonable trier of fact could find the existence of a fiduciary relationship. Therefore, the district court did not err in dismissing Baker Farms' claims for breach of fiduciary duty.

C. Attorney Fees on Appeal
The LDS Corporation requests an award of attorney fees on appeal pursuant to an attorney fee clause in the "Agreement Re: Payment of $180,000." However, the LDS Corporation is not the prevailing party on this appeal, nor can it be determined who will be the prevailing party in the litigation until a final judgment has been entered following remand. See J.R. Simplot Co. v. Enviro-Clear Co., Inc., 132 Idaho 251, 256, 970 P.2d 980, 985 (1998). In considering an award of attorney fees to the party who ultimately prevails in this case, the trial court may take into account attorney fees incurred on this appeal.

III.

CONCLUSION
The district court's dismissal of Baker Farms' cause of action for breach of fiduciary duty is affirmed. The dismissal of the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing is reversed, and the case is remanded to the district court for further proceedings. Costs to appellant.
Judge Pro Tem SCHWARTZMAN (following his retirement) and Judge Pro Tem BAIL, concur.
NOTES
[1] Although Adams asserted that he had paid the rent through alternative arrangements worked out directly with Baker Farms, Baker Farms denies this contention, which also presents a factual issue that cannot be resolved against Baker Farms on summary judgment.
[2] One further observation about the condition precedent defense is appropriate. Even if the LDS Corporation is ultimately successful in persuading the trier of fact that the LDS Corporation's own conduct did not unreasonably contribute to the nonoccurrence of the condition precedent, and that the LDS Corporation therefore is not obligated to make the $180,000 payment, it does not necessarily follow that Baker Farms is entitled to no relief. The failure of a condition precedent to one party's contractual obligation may make the entire contract unenforceable. In a similar situation, where the nonoccurrence of a condition precedent excused the purchaser's performance under a contract for the sale of real property, the Idaho Supreme Court held that the contract failed and that it became incumbent upon the trial court to "settle the accounts between the parties," taking into consideration, among other things, the rental value of the property during the period it was in the possession of the prospective purchaser. Mecham v. Nelson, 92 Idaho 783, 787-88, 451 P.2d 529, 533-34 (1969). See also McMinn v. Holley, 86 Idaho 186, 193, 384 P.2d 229, 232 (1963).
[3] Although it has no direct bearing on this appeal, there is an additional component of the district court's memorandum decision granting summary judgment that warrants our comment for guidance on remand. In the proceedings below, Baker Farms asserted that the parties had modified some of the terms of their original agreement set forth in the Agreement Re: Payment of $180,000. The district court declined to consider any evidence from Baker Farms on this point, stating that because the terms of the original contract were unambiguous, extrinsic evidence of different or additional terms would not be considered. This holding was incorrect: "The parol evidence rule ... excludes only extrinsic evidence of agreements or understandings that precede or are contemporaneous with the written contract; it does not preclude evidence of agreements or statements made after the writing." Herrick v. Leuzinger, 127 Idaho 293, 300, 900 P.2d 201, 208 (Ct.App.1995). See also Brewer v. Pitkin, 99 Idaho 114, 116, 577 P.2d 1162, 1164 (1978); Klundt v. Carothers, 96 Idaho 782, 785, 537 P.2d 62, 65 (1975). Baker Farms' evidence of subsequent modification of the contract terms should not be excluded.