# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49419

RAY MONTIERTH and SUSAN MONTIERTH, husband and wife, Assignees of Centrum Financial Services, Inc.,

    Plaintiffs-Third Party Defendants-Respondents,

v.

DINA M. DORSSERS-THOMSEN, as Personal Representative of the Estate of Hendrik Johannes Dorssers, deceased,

    Defendant-Appellant,

and

JUSTICE PREVAILS, LLC, a Washington limited liability company,

    Defendant-Third Party Plaintiff-Appellant,

and

JOHN L. TILFORD and ROSANNA TILFORD; NEWREZ LLC, a Delaware limited liability company; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), a Delaware corporation; and JOHN H. AND ORAH I. BRANDT FOUNDATION,

    Third Party Defendants-Respondents,

and

L205-ID BEAR LANE, LLC, fka BTC VIII, LLC, a defunct Washington limited liability company; PATRICK L. MCCOURT, BINGO INVESTMENTS, LLC, a Washington limited liability company; AVATAR INCOME FUND

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Caldwell, May 2023 Term

Opinion filed: November 29, 2023

Melanie Gagnepain, Clerk

**I, LLC; a Washington limited liability company; and WELLS FARGO FOOTHILL, INC., a California corporation;**

> **Defendants-Third Party Defendants,**

**and**

**WILDER IRRIGATION DISTRICT and DOES 1-10, whose true names are unknown, who are unknown owners, heirs or devisees,**

> **Third Party Defendants,**

**and**

**DINA M. DORSSERS-THOMSEN,**

> **Defendant.**

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Thomas W. Whitney, District Judge.

The judgment of the district court is <u>reversed</u> and <u>remanded</u>.

Johnson May, Boise, for Appellants Dina M. Dorssers-Thomsen, as personal representative of the Estate of Hendrik Dorssers, and Justice Prevails, LLC. Wyatt Johnson argued.

Gery W. Edson, PA, Boise, for Respondents Ray Montierth and Susan L. Montierth. Gery W. Edson argued.

White, Peterson, Gigray & Nichols, PA, Nampa, and Heidal Law Office, Kimberly, for Respondents John H. and Orah I. Brandt Foundation.

Akerman, LLP, Salt Lake City, Utah, and Jones Williams Fuhrman Gourley, PA, Boise, for Respondents Mortgage Electronic Registration Systems, Inc.; Newrez, LLC; John L. Tilford; and Rosanna Tilford.

_____

MOELLER, Justice.

This appeal concerns the priority of competing mortgages on a parcel of real property in Canyon County, Idaho. The holders of the second priority mortgage, Ray and Susan Montierth

(the "Montierths"), brought a foreclosure action against the holders of the first priority mortgage, Hendrik Dorssers and Justice Prevails, LLC, (collectively "Dorssers"), and a variety of other parties with an interest in the real property. These parties are named in the caption, but they did not participate in the appeal.

Dorssers filed an initial answer and, upon leave of the district court, an amended answer, counterclaim, and third-party complaint. In their pleadings, Dorssers asserted that their priority interest as the holder of the first priority mortgage still prevailed over all other encumbrances. In Dorssers view, a payment made by the debtor—years after the statute of limitations had run on the mortgage—revived the previously stale claim to foreclose their first priority mortgage and reinitiated the statute of limitations under Idaho Code section 5-238. However, on summary judgment the district court concluded that Idaho Code section 5-238 only applied when the payment was made prior to the lapse of the statute of limitations. Accordingly, the district court granted summary judgment to the Montierths after finding that no payment had been made by the obligor prior to the lapse of the statute of limitations and concluding that Dorssers' mortgage was unenforceable as a matter of law. The district court subsequently denied Dorssers' motion for reconsideration and objection to the proposed judgment. Thereafter, the district court entered a judgment and decree of foreclosure in favor of the Montierths, which specifically stated: "[t]hat the [Montierths'] lien interest is superior in time to all other parties' liens, except the mortgage of Hendrik Dorssers and Justice Prevails, LLC, which is time barred and therefor [sic], unenforceable."

On appeal, Dorssers assign three points of error. First, Dorssers argue that the district court erred in concluding that the partial payments did not extend the statute of limitations for enforcement of the first priority mortgage under Idaho Code section 5-238. Second, in the alternative, Dorssers argue that the district court erred in concluding that a junior lien holder can quiet title to a senior lien holder. Third, Dorssers argue that the district court erred in issuing an order to quash the lis pendens they recorded after the appeal was filed. For the reasons discussed below, we reverse the grant of summary judgment and remand the matter to the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the enforceability of the first of four mortgages held on a property and the operation of the relevant statute of limitations. An entity formerly known as BTC VIII, LLC, originally owned the real property at issue (the "Property"), which is located in Canyon County,

3

Idaho. In terms of value, as found by the district court, the Property has a current fair market value of less than $1 million even though it carries mortgage debt in excess of $8 million. As characterized by the district court, although the Property was subject to four mortgages, "it's really a competition between the one held by . . . the Montierths, and also the one held by . . . Justice Prevails and Hendrik Dorssers."

The district court determined that the first mortgage (hereinafter referred to as "Mortgage 1") was executed on April 7, 2006, and was due within a year. BTC VIII, LLC, "gave a note for $650,000, and a mortgage to Mr. Dorssers securing that $650,000 . . . on the property which is the subject of this litigation." The promissory note secured by the first mortgage contained a promise that BTC VIII, LLC, "would not encumber the property further" and that any further encumbrances would be a default on the promissory note. Mortgage 1 was recorded on April 10, 2006.

Three days later, on April 13, 2006, BTC VIII, LLC[,] changed its name to "L205-1 ID Bear Lane, LLC[,]" (hereinafter "Bear Lane"). As the district court explained:

> [The] note and mortgage [were] recorded on April 10[,] 2006. Three days later in Washington the name of the LLC is changed. It doesn't become a new entity. It's simply a name change done in the State of Washington. So BTC VIII, LLC[,] . . . is changed to L205-1 ID Bear Lane, LLC, . . . .
>
> Now that name change was done on April 13, 2006. And there's no real explanation in the record why that name change was done. It's possible to make reasonable inference, but there's no reason why was the name changed three days after the mortgage for $650,000 was recorded with a promise to not encumber further.

Seven days after the name change, Bear Lane encumbered the Property again, this time with a $3 million second mortgage (hereinafter referred to as "Mortgage 2"). [1] The district court noted:

> Seven days later there's another encumbrance on the property in direct contravention of the promise to Mr. Dorssers to not encumber the property further. There's another mortgage made. And this time it's $3 million. And to give some perspective to the value of the property at issue, Mr. Edson in his pleadings references an estimate that the current property value is in the hundreds of thousands, not millions. But this next encumbrance was done by Bear Lane. Now

---

[1] Importantly, Mortgage 2 was not the only mortgage executed on April 20, 2006. As previously noted, the Property had already been encumbered by Mortgage 1 and Mortgage 2 for a total of $3.65 million. Also on April 20, 2006, the same day Mortgage 2 was executed, the Property was encumbered yet again—this time for an additional $2.5 million (hereinafter referred to as "Mortgage 3"). However, the holders of Mortgage 3, originally Bingo Investments but ultimately Wells Fargo, had already been "dealt with" and are not parties to this litigation. The fourth mortgage (hereinafter referred to as "Mortgage 4") was executed on June 7, 2006, originally in favor of Centrum but now held by the Montierths. Mortgage 4 was for another $2 million—totaling the encumbrances at $8.15 million. However, the other mortgages are not directly related to any issues presented on appeal.

4

remember, it's seven days after the same company changes it's [sic] name from BTC to Bear Lane[;] seven days it gives another encumbrance on the property. And that's for $3 million. And that's in favor of Centrum[, however,]. . . their interest is eventually held by the Montierths. This is mortgage number two.

So it's created on April 20th, 2006. $3 million is the note secured by a mortgage, and that is the mortgage which the Montierths seek to foreclose today. So mortgage number two, $3 million, created April 20, 2006, recorded April 21, 2006, $3 million. And so now the subject property has two mortgages on it.

Mortgage 1 was due within one year of execution; however, it was not paid. After two years of nonpayment, Bear Lane, the then title owner to the Property in default on Mortgage 1, executed a "Warranty Deed in Lieu of Foreclosure" on June 25, 2009, vesting title to the Property in Hendrik Dorssers. This deed is also described as a "non-merger deed in lieu of foreclosure" by Dorssers.[2]

Importantly, this "Warranty Deed in Lieu of Foreclosure" was executed by Patrick McCourt, who was listed as the CEO on the deed.[3] Though not a party to this case, McCourt is a key player at various stages of the relationship between Bear Lane and Dorssers. Beyond the "Warranty Deed in Lieu of Foreclosure," McCourt also executed the commercial promissory note and mortgage documents related to Mortgage 1. McCourt executed both of these documents as CEO of Barclays North, Inc., the sole member of the entity now known as Bear Lane. Beyond

---

[2] Generally, a deed in lieu of foreclosure is "[a] deed by which a borrower conveys fee-simple title to a lender in satisfaction of a mortgage debt and as a substitute for foreclosure." *Deed: deed in lieu of foreclosure*, Black's Law Dictionary (11th ed. 2019). While in some states the general rule is "when a holder of a real estate mortgage becomes the owner of the fee, the mortgage and fee are merged and the mortgage is extinguished[,]" some states also permit an "exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, *unless the rights of the mortgagor or third persons are affected thereby*." *U.S. Leather, Inc. v. Mitchell Mfg. Grp., Inc.*, 276 F.3d 782, 786–87 (6th Cir. 2002) (emphasis in original) (quoting *Byerlein v. Shipp*, 182 Mich.App. 39, 451 N.W.2d 565, 569 (Mich. Ct. App. 1990)); *see also N. Side Canal Co. v. Idaho Farms Co.*, 60 Idaho 748, 760, 96 P.2d 232, 236 (1939) (discussing the merger doctrine in the context of a Carey Act project) ("All the argument *pro* and *con* as to merger or non-merger applies only to subordinate liens, to cut off which the superior lien will not merge in the title of the purchaser at foreclosure sale.") (Emphasis in original). The issue of merger, however, is not presented in this appeal. Accordingly, we express no opinion on the propriety of the general merger rule, or the exception, as applied to deeds in lieu of foreclosure.

[3] While it does not demarcate which entity McCourt is CEO of on the signature block, the notarial block gives insight into the organizational structure of the entity:

> Patrick L. McCourt, personally known to me as to be the person who executed this instrument, on oath stated that he was authority to execute the instrument, and acknowledged it as the CEO of Barclays North, Inc, the Member of Union Land Company, LLC, the sole member of L205-1 ID BEAR LANE, LLC to be the free and voluntary act of and deed said limited liability company for the uses and purpose mentioned in the instrument.

acting as CEO, McCourt also held some ownership stake in the entities in the corporate structure involved here.

Also in June 2009, McCourt personally executed a "confession of judgment," which allowed the Snohomish County Superior Court in the State of Washington to enter a $1.4 million judgment against him in favor of Hendrik Dorssers. Importantly, this judgment lists McCourt as the debtor and was executed by "Patrick L. McCourt, *an individual*." (Emphasis added). McCourt and his wife filed for Chapter 7 bankruptcy in September 2013 and the *personal* debt was discharged pursuant to 11 U.S.C. § 727. However, this personal discharge did not discharge Bear Lane's debt under the mortgage and there is nothing in the record indicating that Bear Lane had any of its debts discharged in any bankruptcy proceeding.

In March 2019, nearly ten years after the discharge of Patrick McCourt's personal debt in bankruptcy, McCourt executed another deed related to the Property on behalf of Bear Lane. This time, the deed issued was a "quitclaim deed" to Ray and Susan Montierth. The deed explained that it was executed "by and through its statutory trustees, Kerry Angelos and Patrick L. McCourt," although the copy in the record is executed only by McCourt.[4] Also in March 2019, McCourt executed an "estoppel affidavit" which represented that Bear Lane "ceased to exist as a Washington limited liability company on November 2, 2009, and that Patrick L. McCourt executed this document in his capacity as the statutory trustee of the defunct entity and on its behalf . . . ."

Shortly thereafter, in May 2019, McCourt made two payments to Hendrik Dorssers. In a deposition during this litigation, McCourt explained that these payments to Hendrik Dorssers were intended to be made on Bear Lane's outstanding debt related to Mortgage 1.

> Q. Exhibit 11 is a payment from -- and I'll just represent this was Hendrik Dorssers['] account showing two payments in May of 2019 from Land Pro Group, Inc.
>
> [Are you] familiar with those two payments?
>
> A. Yes.
>
> Q. How are you familiar with those two payments?
>
> A. I made those to Harry [Dorssers].
>
> Q. Okay. And that company Land Pro Group, Inc., that's the company that you use?

---

[4] While the deed is demarcated only as a quitclaim deed, an estoppel affidavit in the record executed by McCourt on behalf of Bear Lane indicates that McCourt "is the person who had statutory authority to and did in fact execute and deliver certain Deed in Lieu of Foreclosure to Ray and Susan Montierth . . . ."

A. It's the company that I own.

Q. Okay. Other than the debt that is shown on the promissory note Exhibit 1, did you have any reason or obligation to make those payments to Mr. Dorssers?

A. No.

Q. And – and why did you make those payments to Mr. Dorssers?

A. I've known Harry for a long time, he's very ill, he's sick, he's destitute. I got some funds in, from an empathetic and a moral perspective, I chose to make those payments.

Q. Did you intend those to be payments -- basically a payment toward that $600,000 debt?

A. Yes.

Q. I believe -- other than those, have you made any other payments to Mr. Dorssers?

A. No.

In August 2019, months after the quitclaim deed was issued to the Montierths and ten years after the "warranty deed in lieu of foreclosure" was issued to Dorssers, the Montierths brought suit to foreclose their loan, Mortgage 2, claiming a default in the payments owed them and arguing that Dorssers' Mortgage 1 could no longer be foreclosed because it was barred by the statute of limitations. In response to the Montierths' amended complaint, Dorssers filed an amended answer, counterclaim, and third-party complaint. Dorssers asserted that their priority interests as the holder of the first priority mortgage still prevailed over all other encumbrances, which included the mortgage held by the Montierths.

The Montierths later moved for summary judgment, arguing that there was no genuine issue of material fact as to their right to foreclose and that Mortgage 1 was unenforceable due to the statute of limitations. Relying on Idaho Code section 5-238, Dorssers argued that the statute of limitations was extended or renewed by a payment on the debt made to Hendrik Dorssers via a wire transfer in May 2019; thus, the mortgage remained enforceable. However, the district court disagreed and ruled from the bench at the summary judgment hearing. In its written order issued later, "codif[ying] the order made orally on the record on 28 October 2021," the district court concluded in relevant part:

1) Judgment shall be entered in favor of Plaintiffs and against Defendant L205-1 ID Bear Lane, LLC, for the amount due and owing under the promissory note dated 20 April 2006 in the principal amount of $3,000,000.00. The promissory note was made by L205-1 ID Bear Lane, LLC, on 21 April 2006 in favor of Centrum Financial Services, Inc. The note was recorded on 21 April 2006. The note was

7

subsequently assigned to Plaintiffs, and they are now entitled to collect on the note. Plaintiffs are entitled to interest at the rate stated in the note.

*2) The debt created by the 20 April 2006 promissory note was secured by [Mortgage 2] which is the subject of this litigation. The mortgage was also dated 20 April 2006 and was also recorded on 21 April 2006. This mortgage is a valid first lien upon the property which is the subject of this litigation. There is no mortgage or lien which is higher in priority; all other liens are subordinate and inferior to this lien.*

3) Plaintiffs are entitled to foreclosure of said 20 April 2006 mortgage. The property which is the subject of this litigation shall be sold at foreclosure sale in the manner provided by Idaho law. Plaintiffs may enter a credit bid of up to $2,000,000.00 at the time of the foreclosure sale.

4) Plaintiffs are entitled to the entry of a deficiency judgment against Defendant L205-1 ID Bear Lane, LLC, if the proceeds of the sale are insufficient to satisfy the amount due and owing under the 20 April 2006 promissory note.

5) All subordinate and inferior liens shall be extinguished by the foreclosure sale subject only to rights of redemption provided in Idaho law.

*6) The mortgage [Mortgage 1] given by Defendant L205-1 ID Bear Lane, LLC, to Defendant Hendrik Dorssers on 7 April 2006 and recorded on 10 April 2006 regarding the property which is the subject of this litigation is of no further force or effect. It is not a lien which is subordinate to the Plaintiffs' lien; rather, it is no longer any lien at all upon the subject property because it may not be foreclosed. This invalid and unenforceable lien is now held by Defendant Justice Prevails, LLC.*

7) The counterclaim, cross claim, and third-party complaint for foreclosure contained in the "Amended Answer to Plaintiffs' Amended Complaint for Foreclosure, and Counterclaim, Cross Claim, and Third-Party Complaint" filed on 1 July 2021 by Defendants Dorssers and Justice Prevails, LLC, are DISMISSED.

(Emphasis added). Dorssers timely appealed.

As noted, Dorssers have raised three issues on appeal. First, Dorssers argue that the district court erred in concluding that the partial payments did not extend the statute of limitations for enforcement of the first priority mortgage under Idaho Code section 5-238. Second, they argue that the district court erred in concluding that a junior position lien holder can quiet title against a senior position lien holder. Third, Dorssers assert that the district court erred in issuing an order to strike the lis pendens.

On May 10, 2023, just prior to oral argument, Dorssers filed a notice of substitution of party. Dina M. Dorssers-Thomsen gave notice of her substitution as personal representative of the Estate of Hendrik Dorssers, who passed away in January 2023. At oral argument, this Court

8

advised the Respondents of their ability to file an objection within 14 days of the filing of the notice of substitution of party. Counsel for Respondents indicated that they had no objection and waived the 14-day filing period provided under Idaho Appellate Rule 7. Accordingly, Dina M. Dorssers-Thomsen, as personal representative of the Estate of Hendrik Dorssers, has been substituted as a party in this action.

## II. STANDARDS OF REVIEW

This Court reviews a grant of summary judgment de novo and employs the same standard of review used by the trial court in ruling on the motion for summary judgment. *United Heritage Prop. & Cas. Co. v. Zech*, 170 Idaho 764, 770, 516 P.3d 1035, 1041 (2022) (quoting *AED, Inc. v. KDC Inv.*, LLC, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)). Accordingly, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021) (quoting I.R.C.P. 56(a)). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007).

When this Court reviews a discretionary decision of the district court for an abuse of that discretion, this Court determines whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III. ANALYSIS

### A. The district court erred in its application of Idaho Code section 5-238 and in concluding that there was no genuine issue of material fact.

While this case has a convoluted history, mainly due to the multiple mortgages and assignments in the record, resolution of this case requires that we answer two straightforward legal questions: (1) can a payment made on a time-barred mortgage still revive the protections afforded to a mortgagee in Idaho Code section 5-238; and (2) was there a genuine issue of material fact relating to whether such a payment has been made? For the reasons discussed below, we conclude

9

that the district court erred in its application of Idaho Code section 5-238 and in its conclusion that there was no genuine issue of material fact as to whether the payment was made by an obligor.

1. *The district court erred in its legal conclusion that any payment on Dorssers' mortgage must have been made prior to the lapse of the statute of limitations for Idaho Code section 5-238 to extend the period of enforceability.*

The effect of a late payment on the status of a debt is explained in Idaho Code section 5-238, which provides that:

> No acknowledgment or promise is sufficient evidence of a new or continuing contract by which to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; *but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt.*

I.C. § 5-238 (emphasis added). Interpreting this provision, the district court concluded that in order to renew the debt, a payment on the debt must be made prior to the lapse of the original statute of limitations. Accordingly, the district court determined that the burden was on Dorssers to establish "that renewal . . . occurred within the statutory period . . . ." We disagree with the district court's legal conclusion.

The district court relied on *Drakos v. Sandow*, in which this Court stated: "For over a century, Idaho law has provided that one may reinitiate the statute of limitations on an unpaid debt for which the statute's period has not yet expired by acknowledging the debt's existence in writing." 167 Idaho 159, 164, 468 P.3d 289, 294 (2020) (quoting *Collection Bureau, Inc. v. Dorsey*, 150 Idaho 695, 698, 249 P.3d 1150, 1153 (2011)). The district court read this statement of law as *mandating* that the payment must be made within the statutory period. However, as this Court also explained in *Drakos*: "the statute of limitations *may be revived* by an unequivocal acknowledgment of the debt's existence in writing." *Drakos*, 167 Idaho at 164, 468 P.3d at 294 (alteration in original) (emphasis added) (quoting *Dorsey*, 150 Idaho at 698, 249 P.3d at 1153). Our opinion in *Drakos* included a quotation from *Dorsey*, in which we said: "Where a debtor acknowledges a debt that has not yet been barred by the statute of limitations, *a continuing contract* is created because the presumption is that he is an honest man, and means at some time in the future to pay [it]." *Drakos*, 167 Idaho at 164, 468 P.3d at 294 (citing *Dorsey*, 150 Idaho 698–99, 249 P.3d at 1153–54) (emphasis added) (alteration in original). Importantly, in both *Dorsey* and *Drakos*, we used the phrase "continuing contract." This is an important distinction: when the payment is made before the statute of limitations has lapsed, the payment results in a *continuing*

10

*contract*, but when made after, it creates a *new contract*. *See Dern v. Olsen*, 18 Idaho 358, 110 P. 164, 167 (1910) (interpreting the predecessor statute, Idaho Rev. Sec. 4078 (1887)) ("This statute recognizes two methods, one an acknowledgment and the other a promise. It also recognizes two kinds of 'contract,' one a 'new' contract, and the other a 'continuing' contract.").

Returning to the text of Idaho Code section 5-238, we find this same distinction between "new" and "continuing" contracts:

> No acknowledgment or promise is sufficient evidence of *a new or continuing contract* by which to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; *but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt.*

I.C. § 5-238 (emphasis added).[5] Thus, we see that the current statute continues to contemplate both a continuing contract *and* a new contract. This is consistent with the perspective applied by the Idaho Court of Appeals in *Thomson v. Sunny Ridge Village Partnership*, where the court stated that "[t]he limitation period can be extended by an obligor *who makes a partial payment after the note is due*. Such partial payment is deemed equivalent to *a new promise* by the obligor to satisfy the debt. I.C. § 5–238." 118 Idaho 330, 331, 796 P.2d 539, 540 (Ct. App. 1990) (emphasis added) (citing I.C. § 5-238).

This Court has long viewed the statute of limitations as only a limitation of the creditor's remedies—it does not remove the underlying debt. For example, in *Kelly v. Leachman*, the original members of Idaho's newly minted Supreme Court held: "It is virtually included in the doctrine universally received and acted upon—that, where there is a new promise to pay a debt barred by the statute, it is not necessary to count upon this as a new contract, but the action may be brought upon the original obligation. The operation of the statute upon the remedy being removed by the new promise, the parties are left *in statu quo*." 3 Idaho 629, 634, 33 P. 44, 45 (1893). While arguably dicta in regard to the specific question here, it is, at the very least, persuasive that in Idaho a payment made after the running of the statute of limitations takes "the case out of the operation of [the statute of limitations]." I.C. § 5-238; *see also McLeod v. Rogers*, 28 Idaho 412, 154 P. 970, 971–72 (1916) ("This [C]ourt in numerous cases has held that the plea of the statute of limitations

---

[5] Idaho Code section 5-238 was amended in 1923 to include the highlighted phrase "but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt." 1923 Idaho Sess. Laws 57. In its introduction, that act states it is "[a]n act to amend [Idaho Code section 5-238] *relating to acknowledgements of new contracts* and providing for the repeal of all acts or parts of acts in conflict herewith." *Id.* (Emphasis added).

11

is a personal one; that it is a privilege which the law gives to the debtor, which he may waive or insist upon. *The statute acts upon the remedy, and not upon the debt. The running of the statute does not extinguish the debt*, and to be available it must be pleaded directly, and cannot be interposed by argument or inference.") (emphasis added) (citing *Moulton v. Williams*, 6 Idaho 424, 55 P. 1019 (1899)); *Sterrett v. Sweeney*, 15 Idaho 416, 98 P. 418 (1908); *Kelly*, 3 Idaho at 629, 33 P. at 44; *Bixby v. Crafts*, 53 P. 404 (Cal. 1898); *Frantz v. Idaho Artesian Well* & Drilling,, *Co.*, 5 Idaho 71, 46 P. 1026 (1896); *Moulton v. Williams*, 6 Idaho 424, 427, 55 P. 1019, 1020 (1899) ("The mortgage is an incident to the debt. It follows the debt, is collateral to it, and stands or falls with the debt. *So long as the creditor is entitled to a judgment for the debt evidenced by his note, so long he may, generally, be entitled to enforce the security given to secure its payment*. If, by our statutes, the security was extinguished by the lapse of a time certain, its life limited by statute, regardless of whether the remedy on the principal object was lost by reason of the bar of the statute or not, as is the case in California, the rule would be otherwise. *The life of the mortgage is not limited in this state.*") (emphasis added) (internal citation omitted)).

Taken together, the district court mistakenly construed our precedents to conclude that Idaho Code section 5-238 does not apply to a payment made after the statute of limitations had initially run. However, Idaho Code section 5-238 permits "*any* payment of principal or interest" to "take the case out of the operation" of the statute of limitations. (Emphasis added). We have consistently held that such a payment need not be made prior to the initial lapse of the statute of limitations. Accordingly, the district court erred in granting summary judgment on the grounds that the payments were made after the statute of limitations had expired.

> 2. *The district court erred in its determination that there was not a genuine issue of material fact relating to whether such a payment had been made.*

While the district court recognized there had been a "transfer of money," it determined as a matter of law that the transfer was not a payment "in recognition of the whole debt." The district court also concluded that summary judgment was warranted because there was no genuine issue of material fact on the issue of whether the payments had been made *by an obligor*. The district court simply found that the payments were not from an obligor and lacked any indication that Bear Lane acknowledged the obligation to pay the debt. Reviewing these facts in the light most favorable to the non-moving party, it is clear to us that there remains a genuine issue of material fact regarding the nature of the payment.

12

In determining whether the "transfer of money" was a payment "in recognition of the whole debt," the district court relied on *Brower v. E.I. DuPont De Nemours & Company*, for the proposition that a partial payment under Idaho Code section 5-238 must be made:

> under circumstances such as warrant a clear inference that the debtor recognizes the whole of the debt as an existing liability. The payment must be distinct, unequivocal, and without qualification, such as to indicate the intent of the payor that it constitute a part payment of the debt in question and to indicate his willingness, or at least his obligation, to pay the balance.

117 Idaho 780, 783, 792 P.2d 345, 348 (1990) (quoting 51 Am. Jur. 2d § 366). Importantly, *Brower* involved a settlement agreement which detailed specific losses for acreage *during* the 1986 growing season—rather than all future losses. We concluded that the debt acknowledged in the debtor's letter was fully paid.

Applying the holding from *Brower* here, we conclude that the record contains conflicting facts as to whether a payment was made with a "clear inference that the debtor recognizes the whole debt." For example, Patrick McCourt, the statutory trustee for Mortgage 1's mortgagee, Bear Lane, testified that (1) he intended the transfer of money to (1) be a payment, (2) he intended the payment was to be made on the outstanding debt, and (3) he had no other reason to make the payment. McCourt explained in his deposition:

> Q. Exhibit 11 is a payment from -- and I'll just represent this was Hendrik Dorssers['] account showing two payments in May of 2019 from Land Pro Group, Inc.
>
> [Are you] familiar with those two payments?
>
> A. Yes.
>
> Q. How are you familiar with those two payments?
>
> A. I made those to Harry [Dorssers].
>
> Q. Okay. And that company Land Pro Group, Inc., that's the company that you use?
>
> A. It's the company that I own.
>
> Q. Okay. *Other than the debt that is shown on the promissory note Exhibit 1, did you have any reason or obligation to make those payments to Mr. Dorssers?*
>
> *A. No.*
>
> Q. And why did you make those payments to Mr. Dorssers?
>
> A. I've known Harry for a long time, he's very ill, he's sick, he's destitute. I got some funds in, from an empathetic and a moral perspective, I chose to make those payments.

13

*Q. Did you intend those to be payments -- basically a payment toward that $600,000 debt?*

*A. Yes.*

Q. I believe -- other than those, have you made any other payments to Mr. Dorssers?

A. No.

(Emphasis added). Thus, while the district court determined that the payment was neither "distinct" nor made "in recognition of the debt," the testimony of the person who made the payments directly contradicts this conclusion and gives rise to a genuine issue of material fact as to whether the payment was made in recognition of the whole debt. Accordingly, resolution of this question is a disputed matter of fact that must be determined at trial.

The district court also concluded that summary judgment was warranted because there was not a genuine issue of material fact as to whether the payment had been made *by an obligor*. The district court seems to rest this conclusion on the fact that the payment came from an account not owned by the now dissolved Washington entity, Bear Lane. However, the payment was made by McCourt, the former owner of the dissolved Bear Lane and one of its current statutory trustees. As detailed more fully above, in his deposition, McCourt was presented with an exhibit showing the two May 2019 payments made to Dorssers from Land Pro Group, LLC, a separate entity owned by McCourt. After McCourt indicated that he was familiar with the payments, counsel for Dorssers inquired how he was familiar with the payments. McCourt responded, "I made those to Harry [Dorssers]." Later in the deposition, counsel for Dorssers then asked McCourt whether he intended those payments to be "a payment toward that $600,000 debt?" McCourt unequivocally responded: "Yes."

The fact that McCourt made a payment toward the debt is particularly noteworthy because the record indicates, as recently as March 2019, McCourt continued to exercise his authority as statutory trustee of Bear Lane. For example, despite previously executing a deed in lieu of foreclosure to Dorssers in 2009, on March 28, 2019, McCourt executed a quitclaim deed to the Montierths. Additionally, as detailed above, this was around the time the payment was made to Hendrik Dorssers—the payment which McCourt testified was made both recognizing the debt *and* intending to be made toward that debt obligation. Thus, we conclude that the evidence in the record puts the issue of whether the payment was made by an obligor in dispute.

14

This conclusion is bolstered by the law of agency. As we have said, "[a]n agent may bind a principal if the agent has actual authority or apparent authority." *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, 109, 218 P.3d 1150, 1170 (2009) (citing *Caballero v. Wikse*, 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004)). In that regard, "[t]here are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party . . . ." *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985). Thus, since an agent may bind a principal in contract with a third party, it follows that an agent of an obligor, acting with actual or apparent authority, can similarly toll the statute of limitations as an obligor can. *See Tucker v. Atkinson*, 245 S.W.2d 388, 391 (Ark. 1952) ("[T]he law is that the agent, in receiving payments, does so within the implied or apparent scope of his authority and the principal is estopped to deny such authority of the agent. By all logic, the same rule [applies to] apparent authority of the agent to *make* payment on the indebtedness and estoppel of the principal to deny such authority. . . ."); *Cross v. Aubel*, 119 P.2d 490, 492 (Kan. 1941); *United States v. Lorince*, 773 F. Supp. 1082, 1093 (N.D. Ill. 1991) ("Thus, the statute of limitations could be tolled as to the appellant only if the bank, in applying his wife's account to the note, had acted as his authorized agent in doing so.") (citing *Joseph v. Carter*, 47 N.E.2d 471, 474 (Ill. 1943)); 51 Am. Jur. 2d Limitation of Actions § 340 (2023) ("A part payment, sufficient to renew the running of the statute of limitations against a debt owing by the principal, may be made by an agent authorized to act in this respect.").[6] Put simply, the fact that the payment was made by a statutory trustee of Bear Lane, from an account not owned by Bear Lane, does not preclude, as a matter of law, the factfinder from concluding that the payment was made on behalf of Bear Lane.

We also note the type of entity at issue here gives rise to the possibility that McCourt was still acting on behalf of Bear Lane. Bear Lane, for which McCourt was the statutory trustee and at least part owner, was a limited liability company ("LLC"). The fact that this is an LLC, rather than a general business corporation, further supports our conclusion that there is a genuine issue of material fact in dispute for two reasons. First, in Washington, LLCs do not have to follow the same corporate formalities as general business corporations.[7] *See* Wash. Rev. Code Ann. § 25.15.061

---

[6] "However, it may be necessary to demonstrate circumstances amounting to an absolute and unqualified acknowledgment by the principal that an additional amount is due." 51 Am. Jur. 2d Limitation of Actions § 340 (2023). This, however, does not undermine the genuine issue of material fact in dispute here—especially given McCourt's deposition testimony.

[7] Since Bear Lane was a Washington state LLC, we cite to the relevant Washington state entity laws.

15

("[T]he failure to hold meetings of members or managers or the failure to observe formalities pertaining to the calling or conduct of meetings is not a factor tending to establish that the members have personal liability for any act, debt, obligation, or liability of the limited liability company if the certificate of formation and limited liability company agreement do not expressly require the holding of meetings of members or managers.").[8] Second, members of an LLC have the authority and autonomy to act on behalf of the entity without the need to observe specific corporate formalities, regardless of whether it is a member-managed or manager-managed. *See* Wash. Rev. Code Ann. § 25.15.154 (manager-managed); Wash. Rev. Code Ann. § 25.15.151 (member-managed) ("If the limited liability company is member-managed, each member is an agent of the limited liability company and has the authority to bind the limited liability company with regard to matters in the ordinary course of its activities.").

Therefore, taken together, there remains a genuine factual dispute concerning whether the payment on the debt was made by an obligor. We recognize that: "Where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, summary judgment can be granted despite the possibility of conflicting inferences arising from those undisputed facts." *Drakos*, 167 Idaho at 166, 468 P.3d at 296 (alteration removed) (quoting *Med. Recovery Servs., LLC v. Neumeier*, 163 Idaho 504, 508, 415 P.3d 372, 376 (2018)). Here, the district court, acting as the factfinder, appears to have drawn certain inferences in favor of the Montierths. However, the facts at issue in this case are disputed. Accordingly, we conclude that the district court erred in making its finding that the payment was not made by an obligor. While the district court may ultimately reach the same conclusion after a bench trial, these are contested questions that the trier of fact must resolve through the crucible of trial.

### 3. Conclusion.

For the foregoing reasons, we conclude that the district court erred in its determinations that (1) to revive the statute of limitations the payment must have been made prior to the lapse of the statute of limitations, (2) the "transfer of money" was not a payment in recognition of the debt as a matter of law, and (3) the payment was not made by an obligor as a matter of law. Accordingly,

---

[8] While Idaho's LLC statutes similarly dispense with many corporate formalities (such as annual meetings), *see* I.C. § 30-25-407, Idaho differs in its default agency rule for members: "[a] member is not an agent of a limited liability company solely by reason of being a member." *Compare* I.C. § 30-25-301, *with* Wash. Rev. Code Ann. § 25.15.151. However, members in member-managed LLCs in Idaho still enjoy "equal rights in the management and conduct of the company's activities and affairs." I.C. § 30-25-407.

we reverse the grant of summary judgment and remand to the district court. Inasmuch as the district court erred in granting summary judgment, we need not address Dorssers' alternative argument on appeal—namely, the asserted conflict between Idaho Code section 6-411 and *Trusty v. Ray*, 73 Idaho 232, 234, 249 P.2d 814, 815 (1952).

## B. The district court erred in striking the lis pendens.

As a separate point of error, Mr. Dorssers asserts that the district court erred in striking the lis pendens he filed following entry of final judgment. While not expressly stating such, Dorssers appear to argue that the district court abused its discretion by not acting consistently with the applicable legal standard. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

A lis pendens is "[a] notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." *Lis Pendens*, Black's Law Dictionary (11th ed. 2019). In Idaho, the legal requirements for a lis pendens are set forth in Idaho Code section 5-505:

> In an action affecting the title or the right of possession of real property, the plaintiff at the time of filing the complaint, and the defendant at the time of filing his answer, when affirmative relief is claimed in such answer, *or at any time afterward, may file for record* with the recorder of the county in which the property or some part thereof is situated, a notice of the pendency of the action, containing the names of the parties, the object of the action or defense, and a description of the property in that county affected thereby. *From the time of filing such notice for record only shall a purchaser or incumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.*

I.C. § 5-505 (emphasis added).

Dorssers filed a lis pendens on December 23, 2021, providing notice that "[j]udgment was entered in the original matter on November 23, 2021, but that matter has been appealed … to the Idaho Supreme Court and such appeal is pending as of the date of this notice." Montierths filed a motion seeking relief. The district court struck the lis pendens on March 3, 2022, ordering that the lis pendens would have "no further force or effect against the property . . . ."

In reviewing Idaho Code section 5-505, we are mindful that "[t]he interpretation of a statute 'must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.' " *Verska v. Saint Alphonsus*

17

*Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)). Idaho Code section 5-505 speaks to when either a plaintiff or a defendant may "file for record" a lis pendens. The statute unambiguously requires plaintiff to do so "at the time of filing the complaint." I.C. § 5-505. The statute also unambiguously and broadly provides that a defendant may file for record a lis pendens "at the time of filing his answer, when affirmative relief is claimed in such answer, *or at any time afterward. . . .*" *Id.* (Emphasis added.) Since the timeframe within which a defendant may file a lis pendens is not ambiguous, we will follow the law as it is written.

Although Dorssers waited until the end of his case, he still filed his lis pendens in good faith *after* the filing of his answer, and while his case was pending appeal, fully disclosing the nature of this appeal in the notice of lis pendens. Accordingly, it was timely under the statute. The legislature has allowed defendants a broad time period within which to file a lis pendens. Given the unambiguous language of the statute, we will not question the legislature's policy determination to broadly provide defendants time to provide notice to the world of continuing litigation that could affect title to a defendant's land through the filing of a lis pendens. *See Verska*, 151 Idaho at 895, 265 P.3d at 508 ("The wisdom, justice, policy, or expediency of a statute are questions for the legislature alone." (quoting *Berry v. Koehler,* 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962)).

Critically, as we have previously made clear, "[a] lis pendens does not create a lien. It gives notice of a pending lawsuit to subsequent purchasers or incumbrancers of real property." *Benz v. D.L. Evans Bank*, 152 Idaho 215, 223, 268 P.3d 1167, 1175 (2012). The purpose of the lis pendens is simply to give "notice to the world of the existence of a claim affecting certain real property." *Jerry J. Joseph C.L.U. Ins. Assocs., Inc. v. Vaught*, 117 Idaho 555, 557–58, 789 P.2d 1146, 1148–49 (Ct. App. 1990) (citing I.C. § 5–505 and *Suitts v. First Sec. Bank of Idaho, N.A.,* 100 Idaho 555, 559, 602 P.2d 53, 57 (1979)). Thus, a lis pendens can conclusively establish constructive notice where a party cannot otherwise establish that a purchaser had actual notice. *See Benz*, 152 Idaho at 223–24, 268 P.3d at 1175–76 ("[T]he lis pendens simply gave notice to the subsequent purchaser and mortgagee of the vendee's action to foreclose a vendee's lien so that the purchaser who later bought the real property and the mortgagee who financed that purchase were not a purchaser and encumbrancer in good faith under Idaho Code section 45–803. The lis pendens was significant because there were no other facts indicating that the subsequent purchaser or the mortgagee had

18

actual notice of the vendee's lien."); *Smith v. Faris–Kesl Constr. Co.,* 27 Idaho 407, 427, 150 P. 25, 32 (1915) (The filing of a lis pendens "is necessary only for the purpose of giving record notice to subsequent purchasers or encumbrancers of the property who have not actual knowledge of the action or of the claim upon which it is based.").

The Montierths argue that Dorssers "had an immediate and defined remedy if they wished to stay the proceedings following entry of judgment which determined their lien to be invalid." In other words, the Montierths assert that Dorssers were required to seek a stay under Idaho Appellate Rule 13. In the Montierths' view, "[Dorssers] chose not to [seek a stay] and attempted to circumvent the appellate rules in an attempt to stay the foreclosure sale."

Had Dorssers wanted to prevent a sale from taking place, they could have posted a supersedeas bond and sought a stay of the judgment from the district court pursuant to Rule 13. However, Dorssers did not post a bond or seek a stay. Instead, by filing a lis pendens, they only provided notice to the world of the pending appeal. Without a stay and supersedeas bond, the Montierths remained free to sell the Property pursuant to the order of the district court. The lis pendens only provided notice of the appeal to a potential purchaser, arguably preserving Dorssers' rights against a bona fide purchaser without preventing the Montierths from selling the Property pending our appeal.

Although Idaho Appellate Rule 13 vests authority and power in the district court to stay proceedings, it does not require a stay in all cases. Because Dorssers did not seek to stay the execution of the judgment, the judgment of the district court remained enforceable. Importantly, the question of the efficacy of a lis pendens on appeal, without a stay and supersedeas bond, is not presented here. Since the Montierths were the ones who purchased the Property in the foreclosure sale, there is not presently a ripe question that concerns a bona fide purchaser before this Court. Thus, we need not address the effect of a lis pendens on appeal without a stay and supersedeas bond. Instead, the question presented here is simply whether the lis pendens was filed properly under Idaho Code section 5-505. We conclude that it was. Therefore, we hold that the district court erred in striking the lis pendens. Accordingly, the district court's order striking the lis pendens is reversed.

**C. The costs awarded to Montierths by the district court are vacated.**

The district court awarded Montierths $1,300.33 in costs as the prevailing parties. Given the result on appeal, we reverse the district court's award of costs since the Montierths should not have prevailed on summary judgment.

### D. Attorney fees on appeal can be awarded to Dorssers by the district court if they prevail after remand.

Dorssers seek attorney fees on appeal under Idaho Code section 12-120(3) arguing that this was an appeal from an action to "recover on . . . [a] note." I.C. § 12-120(3). Specifically, the statute provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3). The language of section 12-120(3) ("shall be allowed") makes it clear that the award of attorney fees to the prevailing parties is not discretionary.

The Montierths, the plaintiffs in this action, filed a quiet title action. Generally, an action to quiet title does not support an award of attorney fees. *Merrill v. Gibson*, 139 Idaho 840, 846, 87 P.3d 949, 955 (2004). However, Dorssers counterclaimed below and sought to enforce their note and foreclose. Thus, unlike in *Merrill* where "leasing the [property] for operation of a nursery [was] not integral to the quiet title claim[,]" 139 Idaho at 846, 87 P.3d at 955, the Dorssers' note was integral to their defense of the action—both below and on appeal—as well as their counterclaim of foreclosure. Accordingly, we hold that because Idaho Code section 12-120(3) applies to Dorssers, they would be eligible for attorney fees on appeal. As we have said, "Idaho Code § 12–120(3) generally mandates an award of attorney fees to the prevailing party on appeal as well as at trial." *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992); *J.R. Simplot Co. v. Chemetics Int'l, Inc. (U.S. Inc.)*, 130 Idaho 255, 258, 939 P.2d 574, 577 (1997).

However, although we have ruled in Dorssers' favor, there remain disputed issues of fact pertaining to both the Montierths' quiet title claim and Dorssers' foreclosure counterclaim to be adjudicated on remand. Therefore, neither party has yet prevailed and we cannot forecast what the outcome of this matter will be on remand. *See Eldridge v. West*, 166 Idaho 303, 314, 458 P.3d 172, 183 (2020) ("Because we do not yet know who will ultimately prevail in this action, any

determination of the prevailing party is premature." (Citing *City of McCall v. Buxton*, 146 Idaho 656, 667, 201 P.3d 629, 640 (2009)).

In a similar case involving the reversal of a district court's order granting summary judgment, we have held that "because we remand for further proceedings, neither party is the prevailing party and the issue of fees is remanded for consideration at the conclusion of the case." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 211, 61 P.3d 557, 568 (2002); *see also J.R. Simplot Co. v. Enviro Clear Co.*, 132 Idaho 251, 256, 970 P.2d 980, 985 (1998) ("The fact that we have vacated the judgment based on the directed verdict and remanded the case to the trial court for a new trial does not entitle Simplot to an award of attorney fees on appeal pursuant to I.C. § 12–120(3). Whether Simplot prevails in a new trial will determine their entitlement to attorney fees under this statute.").

Accordingly, we conclude that an award of appellate attorney fees would be premature at this juncture and leave this matter to the district court to determine in the first instance. *Terra-W., Inc. v. Idaho Mut. Tr., LLC*, 150 Idaho 393, 401, 247 P.3d 620, 628 (2010) ("When the district court makes its prevailing party determination on remand, any award of attorney fees made then may include attorney fees for this appeal." (Citing *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004)).

## IV. CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion. Further, because we conclude it was an abuse of discretion for the district court to quash the lis pendens, that order is reversed. We also reverse the district court's award of costs to the Montierths since they should not have prevailed below.

Costs on appeal are awarded to Dorssers as a matter of course. I.A.R. 40.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR**.

21